UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X

UNITED STATES

- against -

LOUIS EPPOLITO and
STEPHEN CARACAPPA

------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ JAN 31 2006 ★

BROOKLYN OFFICE

MEMORANDUM
& ORDER
05-CR-192

Jack B. Weinstein, Senior United States District Judge:

The government has moved for an anonymous and escorted jury in this racketeering conspiracy case. For the reasons discussed below, the government's motion is denied.

Because the use of an anonymous jury may undermine the presumption of innocence and interfere with the defendant's ability to conduct an effective voir dire, its empaneling requires "strong reason to believe that the jury needs protection." *United States v. Thomas*, 757 F.2d 1359, 1365 (2d Cir. 1985). *See also United States v. Wong*, 40 F.3d 1347, 1376 (2d Cir. 1994) ("Empaneling an anonymous jury undoubtedly has serious implications for a defendant's interest in effectively conducting voir dire and in maintaining the presumption of innocence."). Factors that have been considered in determining the appropriateness of an anonymous jury include: (1) the seriousness of the charges; (2) the threat of corruption of the judicial process; and (3) the potential for publicity. *See, e.g., United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994); *United States v. Paccione*, 949 F.2d 1183, 1192-93 (2d Cir. 1991); *United States v. Vario*, 943 F.2d 236 (2d Cir. 1991); *United States v. Tutino*, 883 F.2d 1125, 1132 (2d Cir. 1989); *United States v. Persico*, 832 F.2d 705, 717 (2d Cir. 1987). *See also United States v. Coonan*, 664 F. Supp. 861,

862 (S.D.N.Y. 1987) ("Our analysis is to be guided by the following factors: 1) the seriousness of the offenses charged, and whether defendants are alleged to be part of a group that possesses the means to harm jurors, 2) whether defendants have engaged in past attempts to interfere with the judicial process, and 3) the degree of pretrial publicity.").

A motion for an anonymous jury must "receive close judicial scrutiny and be evaluated in the light of reason, principle, and common sense." *Thomas*, 757 F.2d at 1363. *See also Coonan*, 664 F. Supp. at 862 ("As the Second Circuit has recognized, the presumption of innocence is part of the foundation of our system of criminal justice, and a practice which burdens it—such as the use of an anonymous jury—must receive careful scrutiny."). Assuming that there is a "strong reason to believe that the jury needs protection," *Thomas*, 757 F.2d at 1365, the district court has broad discretion to determine whether to grant an anonymous jury and whether to hold an evidentiary hearing concerning the proffered factual basis for an anonymous jury. *United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995); *Wong*, 40 F.3d at 1376; *Paccione*, 949 F.2d at 1192.

The charges in this case are serious. Defendants, both retired New York City police detectives, stand accused of having used their positions on the police force to carry out numerous crimes on behalf of the mafia, including murder, kidnaping, bribery, tampering with a witness, victim or informant, retaliating against a witness, victim or informant, and obstruction of justice. The government alleges that the defendants provided the mafia with information about potential cooperating witnesses, ongoing law enforcement investigations, and imminent arrests, and that they committed murders while acting under color of law. If convicted, defendants face life in prison.

Furthermore, while the seriousness of the charges and the strength of the possible penalties alone may not be enough to conclude that a defendant is likely to engage in jury tampering, *United States v. Millan-Colon*, 834 F. Supp. 78, 83 (S.D.N.Y. 1993) ("First, although as the Government contends, the defendants in this case do face stiff penalties if convicted, this fact does not in and of itself lead to the conclusion that the defendants will engage in jury tampering."), specific allegations of witness tampering and obstruction of justice have been raised. This would appear to weigh the balance in favor of a finding that an anonymous jury is warranted. *See, e.g., Vario*, 943 F.2d at 240 ("An obstruction of justice charge, particularly one involving jury tampering, has always been a crucial factor in our decisions regarding anonymous juries."); *Tutino*, 883 F.2d at 1132-33 (defendant's history of jury tampering attempt coupled with defendant's serious criminal records was sufficient to justify empaneling of an anonymous jury); *Thomas*, 757 F.2d at 1365 (empaneling of an anonymous jury was justified because of "strong evidence of defendants' past attempts to interfere with the judicial process").

At the same time, however, an evaluation of the facts in light of "reason, principle and"—perhaps most importantly—"common sense" weighs against a conclusion that there is likely to be any threat of corruption of the jury in this case. While the defendants have been charged with numerous acts of tampering, retaliation, and obstruction of justice, the most recent of these acts is alleged to have occurred in 1991. The defendants have since retired from their positions as New York City police detectives and moved across the country to Las Vegas, where they have now lived for more than a decade. Although the government contends that the defendants have continued their criminal activities in Las Vegas, the criminal acts alleged to have occurred since 1991 can be found to be of a different nature than those alleged to have occurred

3

prior to that time. If the allegations contained in the indictment are true—and they cannot be assumed to be, given the presumption of innocence to which the defendants are entitled—the defendants and their enterprise have shifted the focus of their criminal activities away from day-to-day violence and obstruction of justice to narcotics trafficking. The government has made no claim that the defendants continue to be closely associated with the mafia. Most of the individuals with whom the defendants are alleged to have committed their pre-1991 crimes are dead, incarcerated, or have become government witnesses. There appears to be no reason to expect the local mafia to take action to against a juror on behalf of their alleged erstwhile allies.

There will probably be extensive publicity in this case. As the government noted in its motion, "over 100 articles commenting on this case have appeared in the local New York City newspapers alone." Mem. of Law in Supp. of Mot. for Anonymous and Escorted Jury 12 (Docket No. 110). "[P]ublicity may militate in favor of an anonymous jury because it can enhance the possibility that jurors' names would become public and thus expose them to intimidation by defendants' friends or enemies, or harassment by the public." *Vario*, 943 F.2d at 240; *Persico*, 621 F. Supp. at 878. Yet, publicity alone will not put the jurors at risk. If—as the court finds—neither the defendants nor their associates are likely to engage in any activity that would endanger the jurors or otherwise threaten the integrity of the judicial process, the number of articles written about the case is irrelevant to the determination here.

Because there is no a "strong reason" to believe that the jury in this case needs extraordinary protection, *Thomas*, 757 F.2d at 1365, the use of an anonymous jury is unwarranted and might burden the defendants' rights.

The use of such a jury is contrary to general history and policy: historically, everyone

knew who were the jurors in any trial. Moreover, the use of an anonymous jury would be demeaning. Juries in the Eastern District are made up of solid citizens who do not frighten easily. Since the Battle of Long Island in 1776 they have done their duty to preserve liberty. They do not need to hide.

It is ordered:

(1) The government's motion for an anonymous and escorted jury is denied. Jurors will put their names and addresses on their voir dire questionnaires because revealing ethnicity and location of residence may be important in the selection process.

(2) Prospective jurors will be assured that their questionnaires will be sealed.

(3) The names and addresses of the jurors will not be made public.

(4) The jury will be supplied with limousine service to and from the courthouse for the convenience of its members in view of the intensity and length of the trial. Lunch will be supplied in the jury room.

(5) To avoid unnecessary expense, marshals will not escort the jurors.

SO ORDERED.

Jack B. Weinstein

Dated: January 30, 2006
      Brooklyn, New York