Hon. Judge Jack Weinstein
Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y. 11201
February 12, 2016

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 2 4 2016 ★
BROOKLYN OFFICE

Dear Judge Weinstein,
    Find enclosed a copy of the brief I submitted to the Supreme Court regarding the motions before your court and the 2nd Circuit.
    Please be advised the brief to the Supreme Court was filed due to the fact I have been recently diagnosed with bone cancer and I'm waiting for a transfer to a Medical Facility.
    Therefore I hope that you will take into consideration this new development, when reviewing the motion I submitted last month. Also be advised I did not enclose exhibits "A" through "C" with the enclosed motion because they are the same exhibits provided last month, but enclosed Appendix "D".

Respectfully Submitted
Stephen Caracappa

IN THE
SUPREME COURT OF THE UNITED STATES


In Re Stephen Caracappa


---

PETITION FOR AN EXTRAORDINARY WRIT FOR RELIEF
FROM A CRIMINAL JUDGMENT PURSUANT TO
SUPREME COURT RULE 20 AND 28 U.S.C. § 1651(a).

---


Stephen Caracappa
Submitted Pro-Se
Reg. No. 04597-784
FCC, USP II
P.O. Box 1034
Coleman, FL 33521

## QUESTIONS PRESENTED.

Whether exceptional circumstances now exist from Petitioner recently being diagnosed with an advanced stage of lung cancer that would warrant this Court to exercise its descretionary powers to grant Petitioner an Extraordinary Writ in order to decide Petitioner's claim that his conviction was in violation of Constitutional Law. (1) Lack of jurisdiction under the statute of limitations and (2) a Brady Material Violation.

## LIST OF PARTIES

All parties **do not** appear in the caption of the case on the cover page. A list of all parties to the proceeding in the Court whose judgment is the subject of this petition is as follows:

    (1) US Attorney Office
        Eastern District of New York
        One Pierrepont Plaza
        Brooklyn, NY 11201

    (2) US Solicitor General
        Department of Justice
        Room 5614
        450 Pennsylvania Ave. N.W.
        Washington, D.C. 20530-0001

# TABLE OF CONTENTS

Page No.

QUESTIONS PRESENTED................................  i

LIST OF PARTIES...................................  ii

TABLE OF CONTENTS.................................  iii

TABLE OF AUTHORITY................................  vi

JURISDICTIONAL STATEMENT..........................  1

PRELIMINARY STATEMENT.............................  1

STATEMENT OF CASE.................................  2

REASON FOR GRANTING PETITION......................  5

    1) Favorable History of the Great Writ.......  5

    2) The History of the Erroneous jury
       Instruction as it relates to the
       Statute of Limitations DEeense...........  9

    3) The Flawed Jury Instructions
       Deprived Petitioner of Several of
       His Constitutional Protections...........  14

    4) Newly Discovered Brady Material
       Would Provide for an Alternative
       Defense Strategy.........................  17

    5) Exceptional Circumstances Exist
       that Warrant the Supreme Court to
       Exercise Its Descretionary Powers
       to Entertain this Writ...................  22

REMEDY REQUESTED BY PETITIONER....................  24

CONCLUSION........................................  24

PROOF OF SERVICE..................................  26

APPENDIX..........................................  27

## TABLE OF AUTHORITIES

FEDERAL CASES                                    PAGE NUMBER(S)

Boumediene v. Bush
553 U.S. 723 (2008)........................... 7, 8

Bousley v. United States
523 U.S. 614 (1998)........................... 21

Boyde v. California
494 U.S. 370 (1990)........................... 16

Brecht v. Abrahamson
507 U.S. 619 (1963)........................... 6, 8

Cephus v. United States
328 F.3d 98 (2nd Cir. 2003).................. 21

Estelle v. McGuire
502 U.S. 62 (1991)........................... 16

Fay v. Noia
372 U.S. 391 (1963)........................... 6

Greer v. Miller
438 U.S. 756 (1987)........................... 6, 8

H.J. Inc v. Northwestern Bell Tel. Co.
229 U.S. 236 (1989)........................... 14

Harris v. Nelson
394 U.S. 286 (1969)........................... 7

House v. Bell
547 U.S. 518 (2006)........................... 21

In Re Winship
397 U.S. 358 (1970)........................... 14, 15

Jones v. Cunningham
371 U.S. 236 (1963)........................... 7, 9

Kuhlman v. Wilson
477 U.S. 436 (1986)........................... 7

Middleton v. McNeil
541 U.S. 433 (2001)........................... 15

(iv)

FEDERAL CASES                                      PAGE NUMBER(S)

Murray v. Carrier
477 U.S. 478 (1986)............................ 21

Payton v. Rowe
391 U.S. 54 (1968)............................. 7

Sandstorm v. Montana
442 U.S. 510 (1979)........................... 16

Schlup v. Delo
513 U.S. 298 (1995)........................... 8, 21

United States v. Aina—Marshalla
336 F.3d 167 (2nd Cir. 2003).................. 16

United States v. Al Kassar
660 F.3d 108 (2nd Cir. 2011).................. 16

UNited States v. Burden
600 F.3d 204 (2nd Cir. 2010).................. 14

United States v. Caracappa
543 F.3d 25 (2nd Cir. 2008)................... 4, 13

United States v. Ford
435 F.3d 204 (2n Cir. 2006)................... 16

United States v. Indelcate
865 F.2d 1370 (2nd Cir. 1989)................. 14


**FEDERAL STATUTE**

18 U.S.C. § 1961.............................. 14

18 U.S.C. § 3282(a).......................... 3, 13

28 U.S.C. § 1651(a).......................... 1, 17

28 U.S.C. § 2244............................. 1

28 U.S.C. § 2255............................. 17, 19, 22

2255(F)(4)................................... 1, 22

2255(h)...................................... 1

(v)

**FEDERAL RULES**                                    PAGE NUMBER(S)

Fed. R. Crim P. 29............................. 3

Fed. R. Habeas P. 6(a)......................... 20

Supreme Court Rule P. 20....................... 1

IN THE
SUPREME COURT OF THE UNITED STATES


In Re Stephen Caracappa


---

### PETITION FOR AN EXTRAORDINARY WRIT FOR RELIEF FROM A CRIMINAL JUDGMENT PURSUANT TO SUPREME COURT RULE 20 AND 28 U.S.C. § 1651(a).

---

Stephen Caracappa
Submitted Pro-Se
Reg. No. 04597-784
FCC, USP II
P.O. Box 1034
Coleman, FL 33521

## QUESTIONS PRESENTED.

Whether exceptional circumstances now exist from Petitioner recently being diagnosed with an advanced stage of lung cancer that would warrant this Court to exercise its descretionary powers to grant Petitioner an Extraordinary Writ in order to decide Petitioner's claim that his conviction was in violation of Constitutional Law. (1) Lack of jurisdiction under the statute of limitations and (2) a Brady Material Violation.

## LIST OF PARTIES

All parties **do not** appear in the caption of the case on the cover page. A list of all parties to the proceeding in the Court whose judgment is the subject of this petition is as follows:

    (1) US Attorney Office
        Eastern District of New York
        One Pierrepont Plaza
        Brooklyn, NY 11201

    (2) US Solicitor General
        Department of Justice
        Room 5614
        450 Pennsylvania Ave. N.W.
        Washington, D.C. 20530-0001

# TABLE OF CONTENTS

Page No.

QUESTIONS PRESENTED................................ i

LIST OF PARTIES................................... ii

TABLE OF CONTENTS................................ iii

TABLE OF AUTHORITY................................ vi

JURISDICTIONAL STATEMENT.......................... 1

PRELIMINARY STATEMENT............................ 1

STATEMENT OF CASE................................. 2

REASON FOR GRANTING PETITION...................... 5

    1) Favorable History of the Great Writ....... 5

    2) The History of the Erroneous jury
       Instruction as it relates to the
       Statute of Limitations DEeense............ 9

    3) The Flawed Jury Instructions
       Deprived Petitioner of Several of
       His Constitutional Protections............ 14

    4) Newly Discovered Brady Material
       Would Provide for an Alternative
       Defense Strategy.......................... 17

    5) Exceptional Circumstances Exist
       that Warrant the Supreme Court to
       Exercise Its Descretionary Powers
       to Entertain this Writ.................... 22

REMEDY REQUESTED BY PETITIONER.................... 24

CONCLUSION....................................... 24

PROOF OF SERVICE................................. 26

APPENDIX......................................... 27

## TABLE OF AUTHORITIES

FEDERAL CASES                                    PAGE NUMBER(S)

Boumediene v. Bush
553 U.S. 723 (2008)........................... 7, 8

Bousley v. United States
523 U.S. 614 (1998)........................... 21

Boyde v. California
494 U.S. 370 (1990)........................... 16

Brecht v. Abrahamson
507 U.S. 619 (1963)........................... 6, 8

Cephus v. United States
328 F.3d 98 (2nd Cir. 2003)................... 21

Estelle v. McGuire
502 U.S. 62 (1991)............................ 16

Fay v. Noia
372 U.S. 391 (1963)........................... 6

Greer v. Miller
438 U.S. 756 (1987)........................... 6, 8

H.J. Inc v. Northwestern Bell Tel. Co.
229 U.S. 236 (1989)........................... 14

Harris v. Nelson
394 U.S. 286 (1969)........................... 7

House v. Bell
547 U.S. 518 (2006)........................... 21

In Re Winship
397 U.S. 358 (1970)........................... 14, 15

Jones v. Cunningham
371 U.S. 236 (1963)........................... 7, 9

Kuhlman v. Wilson
477 U.S. 436 (1986)........................... 7

Middleton v. McNeil
541 U.S. 433 (2001)........................... 15

FEDERAL CASES                                    PAGE NUMBER(S)

Murray v. Carrier
477 U.S. 478 (1986).............................. 21

Payton v. Rowe
391 U.S. 54 (1968)............................... 7

Sandstorm v. Montana
442 U.S. 510 (1979).............................. 16

Schlup v. Delo
513 U.S. 298 (1995)............................8, 21

United States v. Aina-Marshalla
336 F.3d 167 (2nd Cir. 2003)................. 16

United States v. Al Kassar
660 F.3d 108 (2nd Cir. 2011)................. 16

UNited States v. Burden
600 F.3d 204 (2nd Cir. 2010)................. 14

United States v. Caracappa
543 F.3d 25 (2nd Cir. 2008)................. 4, 13

United States v. Ford
435 F.3d 204 (2n Cir. 2006)................. 16

United States v. Indelcate
865 F.2d 1370 (2nd Cir. 1989)................. 14


FEDERAL STATUTE

18 U.S.C. § 1961................................ 14

18 U.S.C. § 3282(a)......................... 3, 13

28 U.S.C. § 1651(a)......................... 1, 17

28 U.S.C. § 2244............................... 1

28 U.S.C. § 2255......................... 17, 19, 22

2255(F)(4)................................... 1, 22

2255(h)....................................... 1

**FEDERAL RULES**                                          PAGE NUMBER(S)

Fed. R. Crim P. 29............................. 3

Fed. R. Habeas P. 6(a)......................... 20

Supreme Court Rule P. 20....................... 1

(vi)

**THE SUPREME COURT**
**OF THE UNITED STATES**

In Re Stephen Caracappa            Related Case No.
                                   05-CR-192(JBW)
                                   11-CV-4921(JBW)

### JURISDICTIONAL STATEMENT

The United States Supreme Court has authority to issue
all writs necessary or appropriate in aid of [its]....
"jurisdiction and agreeable to the usages and principals of
law." 28 U.S.C. § 1651(a). This includes the writs of
exceptional and extrordinary circumstances that warrant the
exercise of the Court's discretionary powers pursuant to
Supreme Court Rule 20.

### PRELIMINARY STATEMENT

The issues set forth within this writ are currently
pending in the District and Second Circuit Court of Appeal
under 28 U.S.C. § 2255(F)(4), § 2255(h), and § 2244.
However, the prevailing exceptional circumstances that
warrant the Supreme Court to exercise its discretionary
powers and intercede in the case is that Caracappa is 74
years old and has recently been diagnosed with an advanced
stage of lung cancer which could ultimately become terminal.
Therefore, making it imperative for this Court to resolve
this complex issue of Law present within petition in order
to avoid a complete miscarriage of justice that if not

-1-

addressed could very well allow an innocent man to die in
prison.

## STATEMENT OF CASE

Petitioner Stephen Caracappa, along with his co-defendant
Louis Eppolito, were charged in the Eastern District of New
York.  Which Count One alleged a 26 year long racketeering
conspiracy that charged 17 racketeering acts, 14 of which
allegedly took place in New York City between 1986 and 1993
(hereafter New York Acts), when both co-defendants were
members of the New York Police Department (NYPD).  Act 15
alleged that Eppolito alone had participated in an unlawful
monetary transaction in Nevada between October 2004 and
March 2005.  Act 17 alleged that both Caracappa and Eppolito
engaged in a narcotics conspiracy in Nevada in October 2004
and March of 2005(hereafter the Nevada Acts).  The Government
never alleged nor produced any evidence to the jury during
trial that Caracappa had committed or participated in any
racketeering acts between 1991 and October of 2004.

During trial, the Defense discovered that the Government
could be withholding favorable evidence that would implicate
former FBI Special Agent Lindley DeVecchio as to an
alternative source that provided confidential Law Enforcement
information to Anthony Casso, and other Mafia Members. The
Government denied these allegations.  Specifically, the
Government states in a letter to this Court, dated April 2,
2006 (Docket NO. 268).

-2-

> There is absolutely no information to
> suggest that DeVecchio was in any way
> involved with Anthony Casso. DeVecchio
> worked on the Colombo Squad in the FBI
> and the Government is not aware of any
> information to suggest that DeVecchio
> knew about or spoke to Anthony Casso
> during the 1980's or 1990's.

Consequently, based on the above information, the Defense Counsel made a tactical decision not to call Anthony Casso as a Defense witness, nor implicate former Special Agent DeVecchio as the actual source that had provided confidential Law Enforcement information to several alleged Mafia Members as an alternate defense strategy.

However, it has been recently discovered through FBI 302 forms and multiple other sources that the Government had abundant Knowledge that Special Agent DeVecchio was more than likely the source that divulged the confidential Law Enforcement information that Caracappa and his Co-defendant had been accused of.

A jury convicted Caracappa and his Co-defendant on all counts of the indictment. However, Judge Weinstien granted a defense motion under Fed. R. Crim. P. 29 to dismiss the convictions on Count One. Which held **inter-alia** that because the Government failed to prove that the New York Acts and the Nevada Acts were included in a single continuous RICO conspiracy and that the statute of limitations established in 18 U.S.C. § 3282(a)

-3-

had expired on the RICO conspiracy.  The conviction under counts two (2), three (3), and four (4) were set aside due to spill over prejudice from the proof presented in Count One.

The Government appealed the trial Court's order of aquittal, where the Second Circuit of Appeals reversed the District Court's decision.  Thus, reinstating the jury verdict on all four (4) counts of the indictment, see **United States v. Caracappa**, 543 F.3d 25, 55 (2nd Cir. 2008).

It was discovered long after the Circuit Court reinstated the jury's guilty verdict that the District Court had erroneously instructed the jury where it extended Act 8 of the RICO conspiracy by 10 years longer than it was charged within the indictment.  Thus, having an adverse impact on the jury's deliberations in deciding whether the New York Acts were seperated by more than 10 years from Caracappa's alleged participation in the only Nevada act that he was charged with.

Caracappa has acted with due diligence trying to get both these issues heard on the merits [(1) the Brady violation and; (2) the erroneous jury instruction] Through several post conviction motions only to be procedurally barred.  Therefore, he now prays that this Court will grant his extraordinary writ based on the exceptional circumstances now presented to this Court, or as an

-4-

alternative, to order the lower Courts to review the
motions that are pending before them, on the merits of
his claim, without any procedural impediments.

### REASON FOR GRANTING PETITION

#### FAVORABLE HISTORY OF THE GREAT WRIT

Cursory review of "Federal Habeas Corpus Practice
and Procedure", § 2.5, pp. 98-101, Randy Hertz, James S.
Liebman, Fifth Edition, reveals that the Court recognizes
a range of exceptions to its various preclusion doctrines
in habeas corpus, including, but not limited to innocence,
and that the overall <u>collection</u> of recognized exceptions
is not very different from the meaning the Court has
assigned to **"miscarriage of justice"** in other contexts. Id.
at 98. For example, in one or another context, the Court
supplements its willingness to sidestep procedural obsticles
upon a showing of the petitioner's probable innocence with
a willingness to do the same when necessary:

> (1) to assure federal Court redress for:
>
> >  (a) "structural defects in... Id;
> >
> >  (b) violations of "fundamental... Id. at 99;
> >
> >  (c) procedures that "had... Id.; and
> >
> >  (e) "deliberate and especially eregious error[s]
> >  that are combined with a pattern of
> >  prosecutorial misconduct [that] so infect[s]
> >  the integrity of the proceeding[s] as to

warrant the grant of habeas relief. — Id. at 100 [2]

Innocence is not, however, a necessary condition of habeas corpus relief... Nor is innocence a sufficient condition of habeas corpus relief. Id. at 102. **Fay v. Noia**, 372 U.S. 391 (1963).

Although in form the Great Writ is simply a mode of procedure, its history is inextricably intertwined with the growth of fundamental rights of personal liberty. Id. at 401. For its function has been to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Id. at 401, 402. Its root principal is that in a civilized society, the Government must always be accountable to the judiciary for a man's imprisonment. Id. at 402. [T]he federal courts have the power and the duty to provide [a remedy]. Id. at 441.

Over the years the Supreme Court has developed a highly inquisitive jurisprudence concerning the administration of justice through the Great Writ, which allows for a petitioner to be heard on the merits of his claim. The following cases highlight the Courts reasonings:

---

1. **Brecht v. Abrahamson,** 507 U.S. 619, 638 n.9 (1993)[citing **Greer v. Miller,** 438 U.S. 756, 769 (1997)(Stevens, J., concurring in the judgement)].

2. Fraud on the Court is defined as a lawyer's or party's misconduct in a judicial proceeding so serious that it undermines or is intended to undermine the **integrity of the proceeding.** Black's Law Dictionary, Seventh Edition. pp. 671 (1991)(bold added).

**Jones v. Cunningham,** 371 U.S. 236 (1963)

[T]he statute does not... attempt to limit the situations in which the writ can be used. Id. at 238. Of course, that writ always could and still can reach behind prison walls and iron bars. But it can do more. It is not now and never has been a static, narrow, formalistic remedy. Id. at 243.

**Peyton v. Rowe,** 391 U.S. 54 (1968)

[T]he [habeas] statute does not deny the federal courts to fasion appropriate relief other than immediate release. Id. at 66. Since 1874, the habeas corpus statute has directed the courts to determine the facts and dispose of the case summarily, "as law and justice require." Id. at 67.

**Harris v. Nelson,** 394 U.S. 286 (1969)

There is no higher duty of a court under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus... Id. at 292.

**Kuhlmann v. Wilson,** 477 U.S. 436 (1986)

In decisions of the the past two or three decades construing the reach of the habeas statutes, whether reading those statutes broad or narrowly, the Court has reaffirmed that "habeas corpus had traditionally been regarded as governed by equitable principals." Id. at 447.

-7-

**Greer v. Miller,** 483 U.S. 756 (1987)

On the other hand, there may be... incidents of prosecutorial misconduct, that the <u>integrity of the process</u> is called into question. In such an event, habeas corpus relief should be afforded. Id. at 769 (Stevens, J., concurring in judgment).

**Brecht v. Abrahamson,** 507 U.S. 619, 123 L.Ed.2d 353 (1993)

Our holding does not foreclose the possibility that in an unusual case, [an error] that is combined with a pattern of prosecutorial misconduct, might so infect the <u>integrity of the proceeding</u> as to warrent the grant of habeas relief, even if it did not substantially influence the jury's verdict. 123 L.Ed.2d at 373 n.9.

On June 12, 2008, the Supreme Court decided **Boumediene v. Bush,** 553 US 723 (2008) No. 06-1195. In that decision, the Court extended statutory habeas jurisdiction to aliens detained abroad at Guantanamo Bay. The majority opinion of the Court said that the habeas court must have the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedyand is not the appropriate one in every case in which the writ is granted. Id., slip op. at 50... Indeed, common-law habeas corpus was, above all, an adaptable remedy. Its precise application and scope changed depending upon the circumstances... See also **Schlup v. Delo,** 513 U.S.

-8-

298, 319 (1995)(Habeas "is, at its core, anequitable remedy")
**Jones v. Cunningham,** 371 U.S. 236, 243 (1963)(Habeas is not
"a static, narrow, formalistic remedy; its scope has grown
to achieve its grand purpose").  Id. at 50, 51. <u>See</u> <u>also</u> Doc.
6 at 2.

[T]oday's decision is no judicial victory, but an act
of perserverance in trying to make habeas review, and the
obligation of the courts to provide it, mean something of
value both to prisoners and to the Nation.  Id., slip op.
at 3. (Justice Souter, with whom Justice Ginsburg and Justice
Breyer join, concurring).

This is an unusual case.  The history of the Great Writ
from the Crown to the present supports that there is no limit
to the situations in which the writ can be used.  The habeas
court is obligated to exercise its inherent equitable powers
to address a miscarriage of justice whether commited on a
court in Virginia, or a detainee in Guantanamo Bay.

Based on the above, this Court should resolve
Caracappa's extraordinary writ on the merits to his claim
considering the exceptional circumstances surrounding
this case that will be fully addressed below.

### The History of the Erroneous Jury Instruction
### as it Relates to the Statute of Limitations Defense.

The Defense's entire trial strategy was premised  on
the statute of limitations issue.  Specifically, the Defense
argued that the New York Acts were entirely devoid in

similar purpose and scope as related to the Nevada Acts, and that the Government's evidence at best, proved two (2) independent and distinct conspiracies. Which established that the New York conspiracy had come to its conclusion long before the Government had filed its indictment in March of 2005. As requested by the Defense, the District Court gave extensive instructions to the jury in relation tot he statute of limitation. (See App. at B1)[3] Additionally, another aspect to the statute of limitation provided for the seperation between racketeering acts by more than ten (10) years.

The District Court instructed the jury as follows:

> Now I'm going to talk to you about racketeering acts. You must not find the defendant guilty of the racketeering conspiracy charged in count one (1) unless all of you concur that the defendant ultimately agreed that in total, the members of the conspiracy would commit at least two (2) racketeering acts seperated by not more than ten (10) years. And you must be unanimous as to at least the same two (2) raceteering acts. (See App. at B5).

The Court went on to instruct the jury in each individual act charged in the indictment. However, when the court referenced Act Eight (8), it erroneously gave the **"wrong date"**. Falsely causing an extention of the predicate

---

[3] See at__in parenthesis proceeded by a number reference to the Appendix section of the record for verification of stated facts present within this motion.

act by approximately ten (10) years past the date that was charged within the indictment.

The following is what the jury was instructed as to Act Eight (8):

> Racketeering Act Eight (8), obstruction of justice.  Defendants are charged between "November 1st 1997 and March 1st 1988 approximately."  These defendants did knowingly, intentionally and corruptly obstruct, influence, and impede the due administration of justice by disclosing sensitive law enforcement information regarding Peter Savino. (See App. at B35,36).

However, the indictment clearly charged both defendants as to Act (8) with the following:

> On or about and between November 1987 and March 1, 1988, both dates being approximate and inclusive within the Eastern District of New York and elsewhere, the defendants Stephen Caracappa and Louis Eppolito, together with others, did knowingly, intentionally and corruptly obstruct, influence and impede the due administration of justice, to with by disclosing sensitive law enforcement information regarding Peter Savino in violation of Title 18 United States Code, Section 1503 and 2.  (See App. at A-13-14).

The record clearly demonstrates that the incorrect November 1997 date given by the District Court as to RICO Act Eight (8), erroneously extended the New York Acts all the way into 1997.  However, the indictment alleged that Caracappa's last known participation in the New York Acts ends on April 15, 1991 (See App. at A-20-21, at act 15).  Furthermore, Caracappa was not charged in RICO Act 16 (Conspiracy to Engage in Unlawful Monetary Transaction)

-11-

which his co-defendant Eppolito **"alone"** was charged with.
That act occurred between December 1, 1994, and December
31, 1996, which was the first charge related to the Nevada
Acts. Nor did the Government proffer any evidence that
Caracappa had any involvement in or knowledge of the
unlawful monetary transaction that took place between
Eppolito and Kaplan. In addition, the facts clearly show
that Caracappa had not moved to Las Vegas at the time that
this unlawful transaction occurred. Moreover, Caracappa
was charged in only one (1) of the Nevada Acts (Act 17)
(See App A-20). Which the Government alleged began on
October 25, 2004 and ended with Caracappa's arrest on
March 9, 2005. Therefore, the record clearly demonstrates
a 13 year seperation existed between the New York RICO Acts
and the Nevada Acts which the Government had alleged
Caracappa participated in.

The jury convicted Caracappa and his co-defendants on
all counts of the indictment that each Defendant was charged
under. The jury could not have considered the 13 year
seperation between the New York Acts and the Nevada Acts
(or the 10 year statute of limitation) as it related to
Caracappa's participation in the entire RICO Conspiracy
based on the erroneous jury instruction that extended
his participation in the New York Acts by approximately
ten (10) years. However, the District Court clearly
relied on the correct dates to each overt act where the

-12-

Court granted a defense motion under Fed. R. Crim. P.
29 to dismiss the convictions on count one (1).  Which
held **inter alia** that because the Government had failed
to prove that the New York Acts and the Nevada Acts
were included in a single continuous RICO Conspiracy
and that the statute of limitations established in
18 U.S.C. § 3282(a) had expired on the RICO Conspiracy.
The conviction under counts two (2), three (3), and
four (4), were set aside due to spill over prejudice
from the proof presented in count one (1).

The Government cross appealed the trial court's
order of aquittal.  The Court of Appeals reversed the
District Court's decision.  Thus, reinstating the jury
verdict on all four (4) counts of the indictment, which
held in **Caracappa 543 F.3d 25:**

> On the record we cannot conclude that the
> association of Eppolito and Caracappa as
> partners in providing services to members
> and associates of organized crime had
> ceased to exist before March 9, 2000 as a
> matter of the law.  That issue was within
> the province of the jury to decide as a
> question of fact, and the record provided
> ample evidence to permit the jury to find
> that-that enterprise continued to exist well
> into the five-year period that proceeded to
> commencement of this prosecution. **Id. at 52.**

However, within the above opinion, the record is
devoid of any reference, nor did the Appeals Court take
into consideration, thus evaluate the District Court's
**erroneous** jury instruction which unquestionably tainted
the accuracy reflected in the jury verdict, as it relates

-13-

to the statute of limitation issue, that the jury
was charged with to determine written within the Court's
opinion.

### The Flawed Jury Instruction Deprived Petitioner of Several of His Constitutional Protections.

One (1) of the key elements in a RICO Conspiracy is
that the Government must prove beyond a reasonable doubt to
the jury is; (1) the defendant committed at least two (2)
predicate acts of racketeering within ten(10) years of one
another, see 18 U.S.C. § 1961 (5)(1998); (2) that these
racketeering predicates are interrelated; and (3) that the
reveal continued, or the threat of continual racketeering
activity; **H.J. Inc. v. Northwestern Bell, Tel. Co.,** U.S.
229, 236-239 (1989). The requirements of relatedness and
continuity prevent the application of RICO to isolate
or sporadic criminal acts. **United States v. Burden,** 600
F.3d 204, 216 (2nd Cir. 2010) citing **United States v.
Indelicato,** 865 F.2d 1370, 1375-76 (2nd Cir. 1989).

The Sixth Amendment provides that those "accused of
a crime have the right to a trial by an impartial
jury." This right, in conjunction with due process,
requires that each element of a crime be proved to a
jury beyond a reasonable doubt, **In re Winship,** 397 U.S.
358 (1970). The substance in scope of the right depends
upon the proper designation of the facts that are
elements of the crime, such as the factual aspect to the

-14-

statute of limitation issue in the instant case. Additionally, the **In re Winship,** Court expressly held, that the due process clause protects the accused against conviction except upon proof beyond a reasonable doubt **"every fact"** necessary to constitute the crime with which he is charged.

Therefore, the question that must be answered is "how could the jury make an accurate finding of the facts (regarding the statute of limitation questions), which when they were given an instruction that erroneously extended the life of the New York Conspiracy to which actually closed a thirteen (13) year gap to under ten (10) years in the overt acts that Caracappa had been charged with." Without this error, the jury could easily have determined the facts to the statute of limitation issue differently as to Caracappa's participation in the Nevada Acts, and could they have found two (2) seperate and distinct conspiracies? Thus providing ample proof that Caracappa is actually innocent of the RICO Conspiracy based on the statute of limitations defense.

As the Supreme Court has articulated, in a criminal trial the Government must prove every element of the offenseand the jury instruction violates the due process if it fails to give effect to that requirement. **Middleton v. McNeil,** 541 U.S. 433, 437

-15-

(2001) (quoting) **Sandstorm v. Montana**, 442 U.S. 510,
520-21 (1979). Nonetheless, not every imbiguity,
inconsistancy, or deficiency in a jury instruction
rises to a level of due process violation. The
question is "whether the ailing instruction... so
infected the entire trial that the resulting conviction
violates dur process." **Estelle v. McGuire**, 502 U.S. 62,
72 (1991). "A single instruction to a jury may not be
judged in artificial isolation, but must be viewed in
context of the overall charge." **Boyde v. California**,
494 U.S. 370, 378 (1990). If the charge as a whole is
ambiguous, the question is whether there is a "reasonable
likelyhood that the jury has applied the challenged
instruction in a way that violates the constitution.
Id. at 380. To secure reversal based on a flawed jury
instruction, a defendant must demonstrate both error
and ensuing prejudice, **United States v. Aina-Marshall**,
336 F.3d 167, 170 (2nd Cir. 2003), moreover, jury
instructions are erroneous if it misleads the jury as
to the correct legal standard or does not adequately
inform the jury of the law. **United States v. Al Kassar**,
660 F.3d 108, 126 (2nd Cir. 2011). See also, **United
States v. Ford**, 435 F.3d 204, 209-10 (2nd Cir. 2006).

Petitioner Caracappa has explicitly demonstrated
that recently discovered evidence (erroneous jury

-16-

instructions) viewed in light of all the evidence as a whole, would be sufficient to establish by clean and convincing evidence that no reasonable factfinder would have found him guilty of the RICO Conspiracy based on his statute of limitations defense.  Which provided significant grounds for this Court to grant him the relief that he seeks under the All Writs Acts 28 U.S.C. § 1651(a) based on the exceptional circumstances that this case presents will be discussed fully further in this brief.

### Newly Discovered Brady Material
### Would Provide For an Alternative Defense Stategy.

As previously stated, Caracappa's initial § 2255 motion was premised in part on the Governments withholding of crucial evidence that FBI Agent DeVecchio, over a period of several years, had been providing Scarpa and other Mafia Members—confidential law enforcement information.  In fact, the improper relationship between Special Agent DeVecchio and Scarpa, a Colombo Family soldier, and longtime FBI Confidential Informant has been the subject of countless Post-Conviction motions and civil suits, as well as books and magazine articles.

In the past few years, numerous Government documents, such as FBI 302 forms and other material, along with several books written by Emmy Award winning investigative journalists have come to light that discloses with graphic detail Special Agent DeVecchio thirty (30) year "unholy allience" with famed Mafia Killer Gregory Scarpa, Sr.

-17-

which undeniably proves that the government intentionally withheld a  myriad amount of evidence and other information that clearly established that DeVecchio was the most likely suspect for the source of the leaked confidential information that Anthony Casso recieved allegedly from law enforcement.

For example, in **"Deal With The Devil"**, author Peter Lance writes on page 187 that in one interview on September 23, 2011, with Anthony Casso, Casso stated that Kaplan (the key witness in the instant case) lied on the witness stand.

Specifically, Lance writes:

> But when I spoke to Casso via phone from a Supermax prison, he insisted that he first got the identities of his would-be killers from another source (other than Kaplan through Eppolito or Caracappa) Greg Scarpa, Sr. Casso said, when Kaplan got on the stand (at the Mafia Cops Trial) he testified that he met me after I got shot in 1986, two (2) to three(3) weeks later, by a park in Brooklyn, and he brought me the envelope from the two (2) Detectives with all the photographs of the people who shot me and all kinds of information. But that was a lie. A total lie. When I got shot, it was on a Sunday. Greg Scarpa reached out for me the next day, Monday, and I knew everybody who shot me. I knew everybody's name. Jimmy Hydell. It was given to me that Mickey Boy Paradiso was involved. There were four (4) people involved in the actual shooting. When I asked Casso who supplied Scarpa with that intelligence, he named Lin DeVecchio.

It is highly unlikely that the Government "did not possess" the above relevant information through the countless debriefing sessions Casso had given to Law

-18-

Enforcement Officials prior to trial or even while
Caracappa's original § 2255 motion was still pending.
Which now begs the question, did the defense have all
the essential and compelling information necessary to
make a conscientious evaluation as to whether in the
decision not to call Casso as a Defense Witness that
would undoubtedly have had an adverse affect as to
the truthfullness of Kaplan's testimony.

Furthermore, through extensive research and interviews
by Peter Lance discovered and documented in **"Deal With
The Devil"**, that even though the Casso Debriefings generated
502 pages of FBI 302 forms, where Casso tried to expose the
Scarpa/DeVecchio connection as a primary source for
confidential Law Enforcement information he had recieved
over the course of several years.  The agents (Rudolph and
Brennan) refused to hear or even interrogate him on those
admissions, thus, threatening to pull the plug and his
cooperation agreements if he continued to further implicate
an FBI Agent.  Therefore, directly affecting the fairness
and integrity in Petitioner's initial § 2255 motion. **Id.
at 395-402.**  However, was this recapitulation accurate,
or did at some point, Agents actually record Casso's
accounts as to information he received from Scarpa that
that clearly came through DeVecchio that could even
exonerate Caracappa and Eppolito, that was suppressed

-19-

by the Government.   Either way, this is a crritical
developement that presents newly discovered evidence
that if viewed in light of the evidence as a whole,
would undoubtedly prove actual innocence if presented
to the jury.

Additionally, this newly discovered evidence
demonstrates the magnitude of the Governments Brady
material suppression where it failed to turn over all
302 forms from Anthony Casso, Carmine Sessa, Michael
Casso, Greg Scarpa, Jr., and Greg Zappola, which now
seems to be interrelated as to whether DeVecchio (through
Scarpa, Sr.), was actually the law enforcement source.
Which calls for further investigation under Habeas Rule
6(a) as Caracappa had requested in his initial § 2255
motion.

The newly discovered Brady material clearly
establishes a legal arguement that Caracappa is
actually and factually innocent of the RICO Conspiracy.
Which clearly justifies this Court granting the
instant petition.

Furthermore, the newly discovered evidence is clearly
a **Brady** claim that has severely deprived Caracappa of
his right to due process and his right to a fair trial
as provided for under the protection of the Fifth and
Sixth Amendments.

Additionally, it is well established that "when
a Federal prisoner can demonstrate Actual Innocence
on the existing record," and "where the prisoner
could not have effectively raised his claim of
innocence at an earlier time," (which Caracappa has
satisfied both standards).  Which would Provide for
a retroactive remedy to his claim.  **Cephus v. Nash**,
328 F.3d 98, 104 (2nd Cir. 2003).

The United States Supreme Court, in **Bousley v.
United States**, 523 U.S. 614 (1998), clarified the
standard of demonstrated factual innocence.  Relying
on its prior cases and especially **Murry v. Carrier**,
477 U.S. 478, 489 (1986), the Court noted that:

> ... to establish actual innocence, Petitioner
> must demonstrate that in light of all the
> evidence it is more likely than not that no
> reasonable juror would have convicted him.

Actual innocence, if proved, serves as a gateway
through which a petitioner may pass whether the impedement
is a procedural bar as it was in **Schlap v. Delo**, 513 U.S.
298 (1995) and **House v. Bell**, 547 U.S. 518 (2006), or as
it is in the instant case, expiration of statute of
limitations.  "A petitioner dose not meet the threshold
requirement unless he persuades the Federal Court's that,
in light of the new evidence, no juror, acting reasonably
would have found him guilty based on newly discovered

evidence, (Flawed Jury Instruction and Brady Violation).

In making an assessment to find actual innocence, "the timing of the petition" is a factor bearing on the "reliability of the evidence preporting to show actual innocence. Id. at 332.

The discovery of the erroneous jury instruction and the numerous **Brady** materials that were initially withheld provides significant grounds to establish that Caracappa is both factually and actually innocent of the RICO Conspiracy that would affectively satisfy the gatekeeping provisions to the habeas statute, and warrant a reversal of his conviction.

### EXCEPTIONAL CIRCUMSTANCES EXIST THAT WARRANT THE SUPREME COURT TO EXERCISE ITS DESCRETIONARY POWERS TO ENTERTAIN THIS WRIT.

Both of the above legal arguements have been submitted to the Second Circuit Court of Appeals in an application for a second or successive § 2255 motion under newly discovered evidence. Additionally, the erroneous jury instruction claim was also submitted to the District Court under the newly discovered Fact (f)(4) section to the § 2255 statute which both of these motions are pending at the present time.

The exceptional circumstances that assert this Court's authority to intercede in this case is, directly after Caracappa submitted both habeas motion s to the lower court's, he was diagnosed with an advanced stage of lung cancer. (See App. D Medical Records).

-22-

Specifically, in September of 2015, a CAT scan was preformed which discovered approximately a 2cm tumor on Caracappa's right lung with several smaller lesions on both of his lungs. In December, a second CAT scan was preformed that revealed the tumor had grown approximately 1cm (from 2cm to 3cm) in diamitor, at which time a biopsy was preformed that determined the tumor was cancerous.

Furthermore, this is the second time that Caracappa has been diagnosed with cancer. The first time was in 1994, at which time he had surgery where they removed ninty percent (90%) of one lobe of his left lung to remove the cancer. Because of his previous lung cancer surgery and his advanced age (74 years old), the treating oncologist informed him that further surgery is out of the question, and because of the location where the new tumor has formed, it cannot be treated with radiation therapy. That leaves Cemotherapy. Caracappa will be moved to a Federal Medical Facility within the next two to three weeks to start his recomended treatment.

With the limited treatment options available to Caracappa, and the fact that he is 74 years old, it is highly unlikely that he will become a cancer survivor for a second time. Consequently, it is imperative that this Court exercise its descretionary powers and rule on the claims that Caracappa has presented in order to prevent

-23-

a grave miscarriage of justice that would unjustly
allow a man that is actually innocent to pass away
while unlawfully being held in prison.

### REMEDY THAT PETITIONER REQUESTS.

First, this court has the inherant powers to rule
on the merits of the claims to the violations of
Constitutional Law presented within this petition. (2nd),
to order the lower court's to rule on the merits of the
petitions now pending before them, and (3rd), or as an
alternative, consider this petition as a writ of
prohibition and vacate Caracappa's RICO Conspiracy based
on the Governments lack of jurisdiction to try him for
the offense in accordance with the statute of limitations
defense.

### CONCLUSION

Petitioner has presented two (2) very distinct and
different discoveries of new evidence that was not
previously available to him, that if and when proven,
and viewed in the light of the evidence as a whole, would
be sufficient to establish by clear and convincing evidence
that no reasonable factfinder would have found him guilty
of the RICO Conspiracy as charged.  If these issues are
not decided on the merits, without being procedurally
banned, then an actually innocent man could very well
die in prison.

-24-

Therefore, for the above given reasons, this Court should exercise its descretionary powers and grant petitioner the relief that he seeks through this extraordinary writ.

Respectfully Submitted,

Stephen Caracappa

No. _____

_____

IN THE

SUPREME COURT OF THE UNITED STATES

_____

Stephen Caracappa      — PETITIONER
(Your Name)

VS.

United States Of America — RESPONDENT(S)

**PROOF OF SERVICE**

I, Stephen Caracappa          , do swear or declare that on this date,
_____, 20___, as required by Supreme Court Rule 29 I have
served the enclosed MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*
and PETITION FOR A EXTRAORDINARY WRIT on each party to the above proceeding
or that party's counsel, and on every other person required to be served, by depositing
an envelope containing the above documents in the United States mail properly addressed
to each of them and with first-class postage prepaid, or by delivery to a third-party
commercial carrier for delivery within 3 calendar days.

The names and addresses of those served are as follows:

Solicitor General Of The United States

Room 5614

Department Of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530-0001

I declare under penalty of perjury that the foregoing is true and correct.

Executed on Feb Reccuy 12        , 2016

_____
(Signature)

-26-